UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
--------------------------------X
DAWNA MARTIN-GLAVE,               :
                                  :
          Plaintiff,              :
                                  :
          v.                      :    NO. 3:03CV1482 (EBB)
                                  :
AVENTIS PHARMACEUTICALS,          :
                                  :
          Defendant.              :
--------------------------------X
```

## <u>RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

### <u>Introduction</u>

Defendant Aventis Pharmaceuticals ("Aventis" or "Defendant") filed the underlying Motion for Summary Judgment. Plaintiff Dawna Martin-Glave ("Plaintiff") filed suit against Aventis, Plaintiff's former employer, alleging (1) race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, ("Title VII"), (2) race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, and (4) unlawful retaliation under Title VII in violation of 42 U.S.C. § 2000e-3. For the following reasons, Defendant's Motion is GRANTED on all counts.

### <u>Factual Background</u>

The following facts consist of those deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion. The facts are culled from the Amended Complaint, the

parties' Local Rule 56(a)1 and 2 Statements, the relevant memoranda of law, and the exhibits attached thereto.

Plaintiff, an African-American, was hired in 1991 by Defendant, formerly called Hoechst Roussel Pharmaceuticals, as a sales representative. Plaintiff's primary duties as a sales representative were to visit physicians in her assigned territory, discuss Defendant's products with those physicians, provide them with samples, and encourage them to prescribe Defendant's products. From 1991 to 2001, Plaintiff's performance evaluations were generally positive. However, prior to 2001, Plaintiff's supervisors criticized her for her lack of sufficient product knowledge and her poor planning and organizational skills, and they were particularly concerned with her late submission of required reports. Plaintiff acknowledged that her expense and weekly activity reports were "consistently late" and she failed to meet specific deadlines for completing her tasks. Pl. Dep. 127:8-10, 12-14, 20-24, May 25, 2004.

In late 2001, Craig Panarella ("Panarella"), formerly a sales representative, was promoted to Area Manager and became Plaintiff's supervisor. Panarella is a Caucasian male who was 28 years old at the time of his promotion in 2001.

Part of Panarella's supervisory responsibilities included periodically scheduled Field Assessment Reports ("FAR"), also called "work-with dates" or "ride-alongs." Id. at 182-83. To

2

perform these FARs, which were customary for all area managers, an area manager accompanies and supervises a sales representative during his or her visits to physicians in the sales representative's assigned territory.

Plaintiff reports that for the first ten months of Panarella and Plaintiff's working relationship, which included numerous ride-alongs, Panarella treated her fairly.  Plaintiff also acknowledged that in an early 2002 written assessment of Plaintiff's work performance, Panarella was fair and accurate.  Plaintiff did complain about Panarella in March 2002, alleging he failed to give her timely information about pay raises and bonuses set to take effect in April 2002.  However, bonus information was given to all of the sales representatives under Panarella's supervision in the same manner and at the same time: the information was provided through their paychecks.

In approximately July 2002, Panarella scheduled a FAR with Plaintiff for Thursday, August 22, 2002.  Before the FAR, Panarella requested of Plaintiff that certain sales-related reports be ready in time for Plaintiff's FAR.  Plaintiff failed to provide these reports during this FAR.  Plaintiff alleges Panarella told her "the newer younger people have everything they are supposed to have when they are supposed to have it."  Pl. Dep. at 167.  Panarella denies making this statement.  Panarella Dep. 92, Aug. 24, 2004.  Regardless, Plaintiff admitted that her failure to provide these

reports at the FAR was a performance deficiency.  Pl. Dep. at 198.
In addition, Panarella noted during this FAR that Plaintiff failed
to make a suitable amount of physician visits, the visits were not
of sufficient quality, and she was not contributing as much as her
colleagues to improve Defendant's market share.  Plaintiff
responded by stating that Thursdays and Fridays were often not
productive days for her.

Panarella scheduled two follow-up FARs with Plaintiff for
August 26 and 27, 2002, respectively a Monday and a Tuesday, which
Plaintiff alleged were more productive days for her.  Plaintiff
again failed to make the targeted number of physician visits on
either day.  Panarella suggested a development plan to improve
Plaintiff's product knowledge and sales skills.  The development
plan involved daily role-playing and product review exercises,
including a product knowledge test, as well as submitting a weekly
schedule of physician visits to Panarella.  Panarella told
Plaintiff that she was "a good rep but he wanted [her] to be a
great rep and so he thought his training . . . was going to enhance
[her] skills."  Pl. Dep. at 208.  Plaintiff questioned Panarella's
recommendations, and did not take the requested product knowledge
test.

Plaintiff was not the only sales representative at Aventis
with a development plan.  In 2002, the following representatives
under Panarella's supervision participated in development plans

4

that included specific recommendations to improve their professional skills:

- Kristen Atherholt ("Atherholt"), who is white and under the age of 40;

- Jacqueline Boyer ("Boyer"), who is white and over the age of 40;

- Carrie Wilson ("Wilson"), who is white and under the age of 40;

- Jim Suriano ("Suriano"), who is white and under the age of 40.

Like Plaintiff, Atherholt, Boyer, Wilson, and Suriano were all asked by Panarella to participate in voicemail roleplays with physicians. In addition, Boyer, like Plaintiff, was asked to take a product knowledge test after a medical leave of absence. Suriano was also asked to submit his weekly schedule to Panarella. Suriano refused to comply with Panarella's development plan, and was given a written warning as a result. Suriano received numerous criticisms and concerns regarding his work performance and in September 2002, Suriano resigned from Aventis.

In October 2002, Plaintiff received hand surgery and left Aventis on approved medical leave for one month. Upon her return, Panarella accompanied Plaintiff on another set of FARs on approximately November 19 and 20, 2002. During these FARs, a number of physicians commented to Plaintiff in Panarella's presence that they had not seen Plaintiff or any other of Aventis' sales

representatives for several weeks before and during the time of Plaintiff's medical leave. The other two sales representatives responsible for Plaintiff's territory were not under Panarella's direction. Panarella told Plaintiff it was her responsibility to obtain assistance from her colleagues to visit the physicians in her assigned territory during her medical leave. He also criticized her for failing to obtain the proper coverage from her colleagues. Panarella then informed Plaintiff that she had not adequately complied with the development plan he had established for her in August, specifically the voicemail roleplays and the submission of weekly schedules.

At the conclusion of the November 2002 FARs, Panarella told Plaintiff that he was disappointed in her performance and instructed her not to visit any physicians the following day. Panarella then explained he was not terminating Plaintiff, but was concerned about her work performance and would provide her with a detailed development plan. One or two days later, Panarella contacted Plaintiff and instructed her to resume her physician visits.

Plaintiff's response to Panarella's critique was to provide a note from her doctor stating Plaintiff was experiencing job-related stress, anxiety, and depression. Plaintiff then informed Defendant she needed a medical leave of absence. Defendant granted Plaintiff's request for medical leave.

Around this same time, late November 2002, Plaintiff and her husband went on a vacation to Jamaica for eight days. Plaintiff also filed a complaint against Aventis with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging age and race discrimination. Panarella became aware of this complaint in January 2003 through an email from Aventis' legal department.

In February 2003, after approximately ten weeks of medical leave, Plaintiff sought to return to work on a part-time basis. Plaintiff provided a note from her treating psychologist indicating Plaintiff was still experiencing anxiety and depression and was not yet ready to resume full-time work. Pl.'s Return to Work Health Status Report Form, dated Feb. 24, 2003. Plaintiff and her psychologist also requested certain working conditions for Plaintiff, including: no direct interaction with physicians, a ten-hour work week, responsibility only for administrative duties, and no verbal contact with Panarella. Defendant accommodated all of Plaintiff's requested conditions and allowed her to return to work in early February 2003.

Around February 4, 2003, Panarella sent Plaintiff a fax outlining the administrative duties he wanted her to perform during her requested part-time employment. Among his requests was that Plaintiff take a product knowledge test on the products Plaintiff would be promoting upon her return to her full-time duties at Aventis. Plaintiff objected to this and contacted Human Resources,

inquiring about the appropriateness of the product knowledge test. Human Resources explained that Aventis was moving away from professional relationship-based sales to a product information-based marketing strategy.  Plaintiff also objected by letter to Panarella, asserting she should not be required to take a product knowledge test because she was a "Senior Sales Representative . . . employed for over eleven years with Aventis" and was "a high level performer".  Letter from Pl., Sales Representative for Aventis Pharm., Inc., to Craig Panarella, Area Manager for Aventis Pharm., Inc. (Feb. 19, 2003).    In response to Plaintiff's objection, Panarella wrote:

> My request to complete the test was simply an opportunity
> to reinforce your knowledge as you have been out of the
> territory for some time without the practice of the every
> day sales call. . . .  Again, the test was simply part of
> the requested administrative tasks. As you know, product
> knowledge is an area identified as an opportunity in our
> last work with on August 26th and 27th.  As a result, I
> felt it would be appropriate as well as beneficial for
> you to use the administrative time to review these skills
> and test your knowledge.  This assignment was merely a
> refresher to assist you in transitioning you back to the
> workplace . . . .

Letter from Craig Panarella to Pl. (Feb. 28, 2003).  Despite the explanations from Human Resources and Panarella, Plaintiff declined to complete the product knowledge test.  Plaintiff instead focused her ten hours of work per week in February 2003 on reviewing medical studies and marketing documents for Aventis' products.

Around February 20, 2003, Plaintiff's treating psychologist approved her return to full-time work without any restrictions or

conditions, effective March 17, 2003.  Pl.'s Return to Work Health Status Form, dated Feb. 24, 2003.  On March 17, 2003, the date Plaintiff was scheduled to begin work, Plaintiff and Panarella had a meeting lasting several hours regarding Plaintiff's return to work.  Plaintiff conceded Panarella's expectations were reasonable and that nothing he said or did at that time demonstrated age or racial bias.

Although Plaintiff regarded her meeting with Panarella positive and reasonable, she decided the next day, on March 18, 2003, that she was not ready to return to work.  As Plaintiff stated:

> And I thought what Craig [Panarella] had asked me to do in the action plan was reasonable.  I had spoken to the regional director via voicemail.  He sounded upbeat, I was upbeat, it was . . . great, I felt wonderful.  I had spoken to my teammates and everything was fine there and I just crashed.

Pl.'s Continued Dep. 155-156, July 15, 2004.  Plaintiff informed Defendant of this by leaving a voicemail message for Panarella stating she was going to be absent again.

Defendant sent Plaintiff a letter approximately one week later, dated March 26, 2003, stating the information received from

9

Plaintiff on February 24, 2003[1] was "insufficient to support a conclusion that you are medically unable to perform the essential functions of your job."  Letter from Patty Tribulski to Pl. (Mar. 26, 2003).   The letter also states "[t]his information was necessary to support continued eligibility for pay continuation." Id.   Throughout March and April of 2003, Defendant repeatedly attempted to obtain medical documentation from Plaintiff justifying Plaintiff's absence from work.  Plaintiff failed to provide these documents from either her physician or psychologist to Defendant.

After approximately three weeks of absence with no supporting documentation, Defendant sent Plaintiff another letter by overnight mail on or around April 7, 2003.  The letter stated:

> [I]f your physician provides additional documentation to Health Management to support pay continuation from and after March 20, 2003, your medical leave may be extended.
>
> However, absent such documentation, if you are unable to return to your current position immediately, you will be considered to have abandoned your position and your employment status will be terminated.
>
> If you are aware of any reason why we should not proceed with this course of action, please let me know as soon as possible.  If I do not hear from you by 5:00 p.m. EST on Wednesday, April 9, 2003, we will proceed with the above-stated course of action.

---

[1] The letter from Ms. Tribulski, a Disability Nurse Specialist at Aventis, indicates the date Aventis received the letter from Plaintiff was 3/24/03, not 2/24/03.  Letter from Patty Tribulski (Mar. 26, 2003).  However, the date on the form that Plaintiff's doctor submitted requesting medical leave for Plaintiff is February 24, 2003, not March 24, 2003.  In addition, the Tribulski letter mentions Plaintiff and Tribulski had discussed the form from Plaintiff's doctor on March 21, 2003.  As it is impossible to speak of a letter three days before it was supposedly received, the Court assumes that Ms. Tribulski made a typographical error when she used 3/24/03 instead of 2/24/03.

Letter from Lisa Lucifero, Human Resources Generalist at Aventis, to Pl. (Apr. 7, 2003).  Plaintiff received this letter on or about April 8, 2003, but failed to provide any additional medical documentation justifying her medical leave, and did not indicate any willingness to return to work.

On April 22, 2003, almost two weeks after Defendant's stated deadline of April 9, 2003 for sufficient medical documentation, Defendant sent Plaintiff another letter.  The letter informed Plaintiff that Defendant had determined that Plaintiff abandoned her position and Defendant would now process her termination, effective April 23, 2003.

Plaintiff then brought this suit against Defendant, alleging (1) race discrimination through disparate treatment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 ("Title VII"), (2) race discrimination in violation of 42 U.S.C. § 1981, (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, and (4) unlawful retaliation under Title VII in violation of 42 U.S.C. § 2000e-3.

## Discussion

### I.   Standard of Review for Summary Judgment- Fed. R. Civ. P. 56.

The burden on a motion for summary judgment is on the moving party to demonstrate "there is no genuine issue as to any material fact" and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also  Anderson v. Liberty Lobby, 477 U.S.

11

242, 256 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law", while an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Konikoff v. Prudential Ins. Co. Of Am., 234 F.3d 92, 97 (2d Cir. 2000).

In assessing the record, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 248. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Anderson, 477 U.S. at 256). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Alemenas, 143 F.3d 105, 114 (2d Cir. 1998). This includes "[s]tatements that are devoid of any specifics, but replete with conclusions, [which] are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar Coll., 196 F.3d 394, 404 (2d Cir. 1999), cert denied, 530 U.S. 1242 (2000).

Summary judgment is appropriate if the non-moving party fails to offer enough evidence to enable a reasonable jury to return a

verdict in its favor.  <u>Anderson</u>, 477 U.S. at 248.  If the plaintiff fails to provide any proof of a necessary element of the plaintiff's case, then there can be no genuine issue as to any material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  A complete failure to provide proof of an essential element renders all other facts immaterial.  <u>Id.</u>; <u>see also</u> <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995)(movant's burden is satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

Summary judgment may be appropriate in employment discrimination cases even though such cases often involve the employer's intent or state of mind.  The "summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."  <u>McCloskey v. Union Carbide Corp.</u>, 815 F.Supp. 78, 80 (D. Conn. 1993)(quoting <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir.), <u>cert denied</u>, 474 U.S. 829 (1985).

**II.  <u>Application of Standard of Review</u>**

   **A.   Title VII and Section 1981 Claims**

Section 2000e-2 of Title 42 states it is unlawful for an employer to discriminate on the basis of a person's race or color, <u>inter alia</u>.  Section 1981 also prohibits racial discrimination.  In her Amended Complaint, Plaintiff alleges Defendant unlawfully

13

discriminated against her through disparate treatment on the basis of her race and color.

The United States Supreme Court set forth the standards of a Title VII or Section 1981 claim in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which involves a burden shifting analysis. McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997); Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988); Hudson v. Int'l Bus. Mach. Corp., 620 F.2d 351, 354 (2d Cir. 1980). In the first stage, the plaintiff carries the initial burden of establishing a prima facie case of racial discrimination under Title VII or Section 1981 by demonstrating: (a) she is a member of a protected class; (b) she was qualified for her position; (c) she suffered an adverse employment action; and (d) the adverse employment action occurred under conditions giving rise to an inference of discrimination. McDonnell Douglas, 411 U.S. at 802; McLee, 109 F.3d at 135; see also Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006). The burden at this stage is de minimus. Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)(plaintiff's burden of proof at the prima facie stage "is not onerous").

If the plaintiff demonstrates a prima facie case, then the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the employer produces such evidence,

14

the presumption of discrimination created by the prima facie showing is rebutted and "drops from the case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Although there is a shifting burden, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.   In order to survive a defendant's motion for summary judgment, the plaintiff must demonstrate the defendant's proffered legitimate, non-discriminatory reason for the adverse employment action is pretextual.  De La Cruz v. New York Human Res. Admin. Dep't of Soc. Serv., 82 F.3d 16, 20 (2d Cir. 1996).

      1.   **Prima Facie Case**

          a.   **Elements One and Two: Uncontested**

Elements one and two of the prima facie burden are sufficiently stated and are not contested by Defendant.  Plaintiff is African American of race and black of color and as such is a member of a protected class.  In addition, Defendant does not dispute Plaintiff was qualified for her former position as a sales representative.  However, Defendant asserts Plaintiff did not suffer an adverse employment action and there is no support for an inference of discrimination.

**b.   Element Three: Adverse Employment Action**

A plaintiff sustains an adverse employment action if she suffers "a materially adverse change" in the conditions and terms of her employment.  Galabya v. New York City Bd. of Educ., 202 F.2d 636, 640 (2d Cir. 2000)(quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993).  A "materially adverse change" is more than a mere disruption or inconvenience. Id.  An adverse employment action causes a setback in the employee's career due to a significant change in the employee's responsibilities.  Galabya, 202 F.3d at 641.  Examples of a materially adverse change include termination of employment, demotion as demonstrated by a diminution in wages, diminished responsibilities, or other indices unique to the situation.  Id. at 640.

Plaintiff states the following in support of her claim that she suffered an adverse employment action: (a) she failed to receive bonus and pay raise information from Panarella in February or March of 2002; (b) Panarella critiqued her performance after the August 26 and 27, 2002 FARs and suggested a development plan that involved submitting a weekly schedule of physician visits to Panarella and daily role-playing and product review exercises, including a product knowledge test; (c) Panarella criticized Plaintiff in November 2002 for failing to arrange adequate coverage in her territory while she was on medical leave for hand surgery;

16

and (d) she was terminated from her position on April 23, 2003 after failing to respond to Defendant's requests and provide the proper medical documentation justifying her leave of absence.

Although Plaintiff suggests Panarella's failure to provide her with bonus and salary information in early 2002 was discriminatory, the undisputed facts demonstrate it was not.  Further, this does not constitute an adverse employment action.  All sales representatives on Panarella's team, including white team members, received their salary and bonus information at the same time through their paychecks.  There was no evidence that Panarella caused Plaintiff any diminution in salary or anything else that would represent a materially adverse change.  In addition, courts have held that "[e]xclusion from compensation communication meetings is also not an adverse employment action."  <u>Bennett v. Watson Wyatt Co.</u>, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001).

Furthermore, Panarella's criticisms of Plaintiff with respect to her job performance are not adverse employment actions.  Plaintiff agreed that her failure to submit her reports on her August 2002 FARs was a performance deficiency.  Plaintiff attempted to explain some of her August 2002 performance deficiencies by stating Thursdays and Fridays were not her most productive days, thereby implying she understood she was not performing at an expected level.  Also, Panarella critiqued other sales representatives under his management who were not among Title VII's protected classes and suggested similar development plans,

17

including voicemail roleplays, a product knowledge test, and weekly physician visit reports.

In addition, although Panarella critiqued only Plaintiff for failing to arrange adequate territory coverage during her October 2002 medical leave and not the two other sales representatives responsible for the territory, Plaintiff was the only sales representative in that territory under his management.  Also, Panarella's last criticism of Plaintiff was in November 2002, when Plaintiff stopped working in the field as a sales representative. Plaintiff's position was not terminated until April 2003, over five months later.  In the interim, Plaintiff was allowed ten weeks of medical leave and subsequently was allowed to determine her own conditions of employment.  These actions do not qualify as harms or consequences to Plaintiff, and therefore, "[g]iven that [P]laintiff's negative reviews did not lead to any immediate tangible harm or consequences, they do not constitute adverse actions materially altering the conditions of his employment." Valentine v. Standard & Poor's, 50 F.Supp.2d 262, 284 (S.D.N.Y. 1999), aff'd, 205 F.3d 1327, 2000 WL 232048 (2d Cir. 2000).

Plaintiff's final allegation of an adverse employment action is that Defendant terminated her on April 23, 2003, after she failed to respond to Defendant's repeated requests for supporting paperwork to justify her leave of absence.  Defendant contends that it assumed Plaintiff abandoned her job after she failed to provide

18

the requested paperwork or return to work, and it processed her termination on April 23, 2003.  Plaintiff admits that Defendant requested additional medical documentation in March and April of 2003.  Plaintiff also admits that she did not provide such documentation nor express an interest in returning to work.  It is difficult to see how Plaintiff can expect Aventis to put her position on hold for her despite her failure to respond to its requests over the course of multiple weeks.  However, given that this is a material dispute which is somewhat dependent on a credibility assessment, the Court assumes the sufficiency of the third element.

### c.   Constructive Discharge

Plaintiff does not clearly list constructive discharge as one of her four claims in her Amended Complaint (Doc. No. 16).  Rather, she alleges a hostile working environment as a part of her Section 1981 claim.  However, Defendant anticipated Plaintiff might make the claim and briefed the constructive discharge issue in its Memorandum in Support of its Motion for Summary Judgment (Doc. No. 29).  Plaintiff did not address constructive discharge in its Opposition to the Motion for Summary Judgment ("Opposition") (Doc. No. 36).  Therefore, even assuming Plaintiff was making a constructive discharge claim, she waived it by failing to address it in her Opposition.

Furthermore, the undisputed facts of the case do not support a claim of constructive discharge.  To establish such a claim, a plaintiff must demonstrate that her employer deliberately created working conditions that were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d. Cir. 1983).   "A plaintiff may not claim constructive discharge where there was no more than a change in job responsibilities, based on a reasonable business decision on the part of the employer."  Leson v. Ari of Connecticut, 51 F.Supp. 2d 135, 143 (D. Conn. 1999).   As discussed throughout this ruling, Defendant's actions in critiquing Plaintiff's job performance were reasonable. Plaintiff herself has conceded that at least some of Defendant's criticisms were fair.  In addition, Plaintiff claims that Defendant terminated her, thereby subjecting her to an adverse employment action within Title VII's protections, not that she quit.  Because this Court finds that Plaintiff has satisfied her de minimus burden with respect to the third element of her prima facie case, any constructive discharge claim is now moot.

### d.    Element Four: Inference of Discrimination

The fourth element of a plaintiff's prima facie burden, an inference of discrimination, may arise if a plaintiff can show the adverse actions she complains of resulted in the plaintiff being treated less favorably than employees outside the plaintiff's

20

protected group that are similarly situated in all material respects. <u>Shumway v. United Parcel Service</u>, 118 F.3d 60, 64 (2d Cir. 1997). As is often explained to juries, an inference is not a guess or suspicion. Leonard B. Sand, *et al.*, Modern Federal Jury Instructions 4-75 ¶ 75.01 (2006). Rather, it is a "conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary (8th Ed. 2004). Materiality is measured by determining whether Plaintiff and the individuals she compares herself with exhibited comparable conduct and were subject to the same workplace standards. <u>Eqbarin v. American Express Co.</u>, 415 F.Supp.2d 413, 426 (D. Conn. 2006).

Plaintiff asserts she satisfies the fourth element of the <u>prima facie</u> test because she was the only African American under Panarella's supervision. Plaintiff states in her Opposition that the only other African American left Defendant's employ in February 2004 and asserts that currently Panarella's team consists of all white females under the age of 40. However, Plaintiff contradicts herself regarding the latter assertion because, in her R. 56(a)2 Statement, she states that one of the sales representatives under Panarella's current supervision includes a non-white employee. Pl.'s Local R. 56(a)2 Statement p. 5. Regardless of the current makeup of Panarella's sales team, Plaintiff admits in her deposition that Panarella never said or did anything Plaintiff

considered racially discriminatory or offensive. Pl. Dep. at 165-66.

The undisputed facts demonstrate Plaintiff was treated similarly in all material respects to white sales representatives under Panarella's direction. As stated above, a number of white sales representatives under Panarella's direction were under development plans similar to Plaintiff's. Specifically, Jackie Boyer, a white female, was asked to take a product knowledge test after a medical leave of absence, as was Plaintiff. Also, Jim Suriano, a white male, was asked by Panarella to submit weekly physician visit schedules, which Panarella also asked of Plaintiff. Because Suriano failed to comply with his development plan, he, like Plaintiff, was critiqued.

Also belying an inference of discrimination is the consistent criticism of Plaintiff's performance. Plaintiff complains of discriminatory treatment at the hands of her manager Panarella. She does not complain of any other of Defendant's employees exhibiting discriminatory animus. However, Plaintiff's supervisors prior to Panarella expressed the same criticisms: Plaintiff's lack of sufficient product knowledge and poor planning and organization, noting especially her late submission of reports.

With facts similar to the ones at hand, the Second Circuit has held that there can be no inference of discrimination. In <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130 (2d Cir. 1997), the plaintiff was a

black male who filed a Title VII and Section 1981 race discrimination claim against his former employer. The plaintiff, William McLee ("McLee"), who did not dispute even half of his negative reviews from superiors, immediately absented himself from work for an asserted medical reason after he received negative reviews. Id. at 135-36. He then presented a documentary medical excuse that was contrary to his representations to his employer regarding his doctor's recommendation. Id. at 136. McLee also initially accused his supervisor of having problems with minorities, but later retracted his statement in his deposition testimony. Id. The Second Circuit held that no reasonable jury could infer a discriminatory motivation from those facts. Id.

Like McLee, Plaintiff in the present action admitted to performance deficiencies complained of in her reviews by her supervisor Panarella. In addition, Plaintiff excused herself from work after her negative reviews in November 2002 for a medical reason. Also like McLee, Plaintiff failed to return to work when her doctor cleared her to resume her full-time position and duties. Finally, in both McLee and the present case, each plaintiff admitted to the defendants' lack of discriminatory animus.

Although the burden on Plaintiff is de minimus, courts must carefully distinguish between evidence that allows for a rational inference of discriminatory intent and mere speculation or conjecture. See Western World Ins. Co. V. Stack Oil, Inc., 922

F.2d 118, 121 (2d Cir. 1990); see also Shumway, 118 F.3d at 65.
Based on the ruling of the Second Circuit in McLee, a lack of
disparate treatment when compared to other employees, and
Plaintiff's own admission of a lack of racially discriminatory
animus, the Court finds there is no inference of discrimination.
Plaintiff has failed in her burden to satisfy all elements of her
prima facie case.

### 2.   Legitimate Non-discriminatory Reason

If the plaintiff fulfills her prima facie burden, the next
step in the McDonnell Douglas burden shifting analysis calls for
the defendant to demonstrate a legitimate non-discriminatory reason
for its adverse employment action.   McDonnell Douglas, 411 U.S.
at 802.  Defendant has satisfied this burden.  As explained above,
the only adverse employment action asserted by Plaintiff that
remains viable is Plaintiff's termination from her position.  There
is no dispute that Plaintiff failed to return to work or provide
additional documentation supporting an extended leave of absence
after May 17, 2003, the date Plaintiff's physician cleared her to
resume full-time work at Aventis.  It is also undisputed that
Defendant repeatedly requested additional documentation from
Plaintiff over the course of almost three weeks, which Plaintiff
did not provide.  Plaintiff admits that she received a letter
dated April 7, 2003, wherein Defendant asked Plaintiff for either
her immediate return to work or medical documentation that

supported an extended medical leave.  In this letter, Defendant set a deadline of 5 p.m. on April 9, 2003, for Plaintiff's response, or it would assume she abandoned her position and whereupon Defendant would terminate her employment status.  Despite receiving this letter, Plaintiff failed to provide any additional medical documentation justifying her medical leave or indicate a willingness to return to work.

Furthermore, Defendant did not terminate Plaintiff's position until April 23, 2003 – almost two weeks after Defendant's stated deadline of April 9, 2003.  Defendant's termination of Plaintiff is reasonable due to Plaintiff's failure for over five weeks to provide the necessary documentation to continue her medical leave. Therefore, Defendant fulfilled its burden by providing a legitimate non-discriminatory reason for its termination of Plaintiff.

### 3.  Pretext

Assuming, _arguendo_, Plaintiff established her _prima facie_ case, once the employer has provided sufficient evidence to support a legitimate non-discriminatory reason for its decision, the plaintiff must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but a pretext for discrimination."  _Burdine_, 450 U.S. at 253.  "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of

25

credence,'. . . or by reliance on the evidence comprising the prima facie case, without more . . . ." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994) (quoting Burdine, 450 U.S. at 256, and citing St. Mary's Honor Ctr., 509 U.S. at 511). As in her prima facie burden, a plaintiff may also establish pretext by demonstrating that similarly-situated employees outside of the protected class were treated differently. McDonnell Douglas, 411 U.S. at 804.

In support of her argument that the Defendant's non-discriminatory reason is pretext, Plaintiff first mentions that the March 26, 2003 letter from Defendant states Plaintiff is on approved unpaid FMLA medical leave. While the letter does so state, that does not absolve Plaintiff of her responsibility to provide the appropriate medical documentation justifying her leave of absence. In addition, Plaintiff improperly claims the April 7, 2003, letter from Defendant's Human Resources Department lists the only consequence for insufficient medical documentation as discontinued pay. However, the letter clearly states "absent such additional [medical] documentation, if you are unable to return to your current position immediately, you will be considered to have abandoned your position and your employment status will be terminated." Letter from Lisa Lucifero to Pl. (Apr. 7, 2003). Based on these facts, a reasonable jury could only determine that Defendant's decision to terminate Plaintiff was reasonable after

26

she failed to provide the appropriate supporting medical documentation despite Defendant's repeated requests for it.

Plaintiff also asserts as evidence of disparate treatment that the product knowledge test was implemented in a discriminatory fashion. Plaintiff offers Jackie Boyer, a senior sales representative and a white female over 40, as an example in support of her pretext argument. Like Plaintiff, Boyer was asked to complete a product knowledge test after an extended leave of absence. While this could, hypothetically, support Plaintiff's ADEA claim, it serves to disprove her disparate treatment allegations referenced in her Title VII and/or Section 1981 claims. It demonstrates a similarly-situated white employee was treated in the same manner as Plaintiff.

Plaintiff has not offered any evidence that a similarly-situated white employee was treated differently than she was, nor that Defendant's proffered legitimate non-discriminatory reason is unworthy of credence. Therefore, even assuming Plaintiff satisfied her prima facie burden of racial discrimination under Title VII and Section 1981, which she has not, she has also failed to demonstrate pretext.

**B.   ADEA Claim**

The Age Discrimination in Employment Act, 29 U.S.C. § 623, prohibits an employer from discriminating against any individual on the basis of age. An ADEA claim of disparate treatment, like

a Title VII or Section 1981 claim, must survive an application of the <u>McDonnell Douglas</u> burden-shifting criteria.  <u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 83 (2d Cir. 1990).  As with the Title VII and Section 1981 claims, elements one and two of the ADEA <u>prima facie</u> burden are undisputed.  The ADEA protects employees who are at least forty years of age, 29 U.S.C. § 631(a), and it is undisputed Plaintiff was over the age of forty at the time of the alleged adverse employment action.  Also, Defendant does not challenge the second element of the <u>prima facie</u> burden, whether Plaintiff was qualified for her former position.  In addition, the Court determined Plaintiff satisfied her burden of demonstrating she suffered an adverse employment action as a result of her termination, thereby satisfying the third <u>prima facie</u> element.

The parties dispute the fourth element of Plaintiff's <u>prima facie</u> burden, whether an inference of age discrimination exists. In support of this element, Plaintiff cites one remark by Panarella.  After Plaintiff failed in August 2002 to submit her sales-related reports in a timely fashion, which she acknowledges was a performance deficiency, she claims that Panarella told her "the newer younger people have everything they are supposed to have when they are supposed to have it."  Pl. Dep. at 167.  While Panarella denies making this statement, for purposes of this motion the Court must view all evidence in favor of the non-

moving party.  Anderson, 477 U.S. at 249-50.  Therefore, the
Court assumes Panarella made this statement to Plaintiff.

In addition to the statement itself, the Court must also
examine the events surrounding this statement.  As the Second
Circuit states, "at summary judgment in an employment
discrimination case, a court should examine the record as a
whole. . . ."  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d
93, 102 (2d Cir. 2001).  After Panarella's statement was made,
Defendant allowed Plaintiff a medical leave of absence lasting
over two months and granted her requests to work only part-time
and on strictly administrative duties with no contact with
Panarella for a month and a half.  Also, Panarella's statement
was made in August 2002, over eight months before Plaintiff was
terminated.  For the five months prior to her termination,
Plaintiff did not meet with any doctors or their staff in her
territory, which was her primary job responsibility as a sales
representative.

Furthermore, Plaintiff has failed to provide the Court with
any specific ages of sales representatives other than a broad
description of their being "over 40" or "under 40".  An inference
of discrimination may arise if a plaintiff can show the adverse
actions she complains of resulted in the plaintiff being treated
less favorably in all material respects than similarly-situated
employees outside the plaintiff's protected group.  Shumway, 118

29

F.3d at 64.  Also, as the Supreme Court states, "[i]n the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger."  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996).  Plaintiff has not provided the specific ages of the allegedly similarly-situated employees with whom she compares herself; rather, she has offered only vague references to general age groups.  In order for the Court to determine an inference of discrimination exists due to Plaintiff's replacement by younger, similarly-situated employees, Plaintiff must provide evidence that she was replaced by someone significantly younger.  O'Connor, 517 U.S. at 313.  Plaintiff failed to provided the Court with sufficient information to make such an inference.

In support of her argument that the sales representatives under Panarella are "exclusively under the age of 40,"[2] Plaintiff cites the deposition of a current sales representative of Defendant's under Panarella's direction, Jackie Boyer.  In the cited testimony, Boyer describes the current makeup of Panarella's team as "a young team in terms of years of service, but he had older people on the team."  Boyer Dep. 53: 3, 23-24, Oct. 11, 2004.  Boyer then goes on to describe a meeting with sales representatives and their managers, including Panarella,

---

[2] The quoted language is from Pl.'s Opp'n to Def.'s Mot. For Summ. J. p. 16.

where the sales representatives were mostly in their twenties and thirties.

Plaintiff's use of this evidence does not support an inference of age discrimination.  First, Plaintiff contradicts herself by claiming that all of Panarella's current sales representatives are under 40; however, she goes on to state Boyer, who is a current member of Panarella's sales team, is over 40.  Pl.'s Opp'n at 16 (claim that all of Panarella's sales representatives are under 40); Pl's 56(a)2 Statement pp. 4-5 (Boyer is "over 40"); Panarella Dep. at 20 (Boyer still employed by Defendant).  Second, while Boyer's comment does refer to the respective ages of the sales representatives, it is unclear whether those representatives are similarly situated.  Plaintiff complains of her mistreatment by her manager Panarella.  She does not complain of any other ageist discrimination or ageist treatment by anyone else at Aventis.   Therefore, a proper comparison of employees outside the protected age who are similarly situated in all material respects must include other sales representatives under Panarella's management.  However, while Boyer states that the representatives were mostly in their twenties and early thirties, she was referring to "other managers with their folks as well."  Id. at 53: 21-24.  As such, it is impossible for the Court to determine which of these sales representatives were similarly situated.  Based on the foregoing

31

undisputed facts, no reasonable trier of fact could find an inference of age discrimination exists.

Assuming, arguendo, Plaintiff met her prima facie burden, Defendant has satisfied the next step of the McDonnell Douglas burden-shifting analysis.  Defendant has provided a legitimate non-discriminatory reason for Plaintiff's termination.  McDonnell Douglas, 411 U.S. at 802.  As described above, Plaintiff's failure for over five weeks to provide medical documentation justifying her extended leave of absence is a legitimate non-discriminatory reason for terminating Plaintiff.

Because Defendant has fulfilled its burden, the third prong of the McDonnell Douglas test requires Plaintiff to demonstrate Defendant's legitimate non-discriminatory reason is merely pretextual.  Burdine, 450 U.S. at 253.  As explained earlier, a Plaintiff may show pretext by demonstrating the employer's proffered explanation is false or by relying on the prima facie case.  Chambers, 43 F.3d at 38.

The only support Plaintiff provides to establish that Aventis' legitimate non-discriminatory reason is pretext is that a similarly-situated co-worker was, like Plaintiff, required to take a product knowledge test after an extended leave of absence.  Panarella Dep. at 124.  The co-worker Plaintiff points to is Jacqueline Boyer, who is a sales representative over the age of 40 under Panarella's direction at Aventis.  For the reasons stated earlier, Plaintiff's and Boyer's absences, each of which

lasted for more than a couple of months, provide sufficient justification for Defendant's request that they take such a test. Furthermore, in Plaintiff's case, product knowledge was an area identified as one needing improvement even before Panarella became Plaintiff's manager.

Once again, all the evidence must be examined in light of the surrounding circumstances. <u>Byrnie</u>, 243 F.3d at 102.  In the seven months prior to her termination, Plaintiff worked full-time for only <u>one</u> of those months.  She worked part-time, at ten hours a week under conditions she mandated, for only one and a half of those months.  During the remaining four and a half months, Plaintiff did not work.  However, Defendant allowed Plaintiff medical leave, for some of which she was paid.  Plaintiff had no contact with the doctors in her territory or their offices, which was her primary job responsibility, for five months before she was terminated.   As a final note, Plaintiff herself admits that, other than the remark she claims Panarella made above, he never exhibited ageist behavior towards her or anyone else.  Pl. Dep. at 168-69.

After examining all the evidence as a whole, it is apparent that no reasonable trier of fact could find Plaintiff established that Defendant's legitimate non-discriminatory reason for her

termination was pretextual.[3]  For the foregoing reasons, summary judgment is hereby granted as to Plaintiff's ADEA claim.

###    C.    Retaliation Claim under Title VII

42 U.S.C. § 2000e-3 makes it unlawful for an employer to discriminate against an employee for pursuing a discrimination action under Title VII.  Like Plaintiff's other claims, retaliation claims under Title VII are analyzed under the McDonnell Douglas burden-shifting framework.  Brunson v. Bayer Corp., 237 F.Supp.2d 192, 205 (D. Conn. 2002); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996). First, the plaintiff must demonstrate a prima facie case of retaliation, which requires her to show (1) participation in a protected activity demonstrated by opposing a practice made unlawful by Title VII; (2) that the employer was aware of the activity; (3) that she suffered an adverse employment action; and (4) there was a causal nexus or connection between the protected activity and the adverse employment action.  Hollander, 895 F.2d at 85.  Upon this showing by the plaintiff, the defendant must articulate a legitimate non-discriminatory reason for its actions.  Van Zant, 80 F.3d at 714.  It is then the plaintiff's

---

[3] Neither party provided the ages of Defendant's sales representative applicants for the Court to compare with the current composition of Panarella's team to determine if Panarella's team contained a disproportionate number of significantly younger people.  As the Second Circuit has stated, "It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation." Hollander, 895 F.2d at 84.

burden to demonstrate the defendant's explanations are pretext for discrimination.  Id.

Here, elements one, two, and three of Plaintiff's prima facie burden are met.  Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") in November 2002 alleging age and race discrimination, thereby fulfilling the first element.  Hollander, 895 F.2d at 82, 85 (filing an agency complaint with the CHRO or the EEOC fulfills the first element of prima facie case of retaliation).  Aventis and Panarella learned of this complaint in January 2003, fulfilling the second element.  Id. at 85.  Also, as discussed above, this Court holds that Plaintiff suffered an adverse employment action through her termination by Defendant, thereby satisfying the third element.

The parties dispute the fourth element of Plaintiff's prima facie case: whether there is a causal nexus between Plaintiff's filing a complaint with the CHRO and her subsequent termination. In support of this element, Plaintiff cites two cases from the Second Circuit.  First, Plaintiff cites Hollander, 895 F.2d at 85-86, in support of the proposition that temporal proximity between the protected employment activity and adverse employment action by itself is not determinative.  Pl.'s Opp'n at p. 17. This proposition is true because, as explained earlier, a court must view all evidence in the light of the surrounding

circumstances.  Byrnie, 243 F.3d at 102.  These surrounding
circumstances include the undisputed facts that after Defendant
and Panarella became aware of Plaintiff's CHRO complaint, they
allowed Plaintiff to continue her medical leave and impose her
own employment conditions, and encouraged her to submit paperwork
documenting an extended medical leave or to return to her full-
time position.

Furthermore, Plaintiff's citation of Hollander in support of
her retaliation claim is curious because, there, the Second
Circuit upheld the trial court's grant of summary judgment for
the employer on the plaintiff's retaliation claim.  The Second
Circuit's ruling was based on its finding that the plaintiff had
not demonstrated a causal nexus between the protected activity
and the retaliatory act, despite being only three months apart.
Hollander, 895 F.2d at 86.

The second case Plaintiff cites in support of her nexus
argument is Taitt v. Chemical Bank, 84 F.2d 775 (2d Cir. 1988).
Plaintiff asserts that in Taitt, "the Second Circuit reversed the
granting of summary judgment in favor of the employer-defendant
despite a one-year lapse between the protected activity and the
retaliatory act."  Pl.'s Opp'n at 17.  In Taitt, which dealt with
a motion for a directed verdict after a trial, not a motion for
summary judgment, the plaintiff became actively involved in a
Title VII class action discrimination lawsuit in March 1981
against his employer, a bank.  Id. at 776.  He objected to a

36

number of settlement proposals, the second of which occurred in March 1983 and received press attention.  Id.; see also Plummer v. Chemical Bank, 97 F.R.D. 486 (S.D.N.Y. 1983)(revealing March 1983 date).  Plaintiff's career at the bank quickly declined after his involvement in the class action suit.  Taitt, 849 F.2d at 776.  He was denied a promotion in March 1981, suffered a demotion in June 1982, and had his performance rating changed from satisfactory to unsatisfactory shortly after his rejection of the second settlement proposal.  Id.  In March 2004, the plaintiff was fired, which was shortly after he filed a complaint with the Equal Opportunities and Employment Commission (EEOC).  Id.  The plaintiff then filed suit against his former employer, alleging retaliation under Section 1981 and a four-day jury trial was held.  Id. at 776-77.  At the close of the evidence, the employer filed for a motion for directed verdict, which the district court granted on the basis that the plaintiff had failed to establish a prima facie case of retaliation.  Id. at 777.

The Second Circuit determined that, although there was no "smoking gun," the plaintiff had demonstrated enough of a causal link for the case to go to the jury because (a) the plaintiff's managers were aware of the plaintiff's objections to the settlement proposals; (b) the proximity between his involvement in the class action suit and his troubles at the bank was sufficiently close; and (c)the plaintiff pointed to similarly-

situated employees enduring similar disparate treatment.  Id. at 778.

Here, as in Taitt, there is no "smoking gun."  However, there are key differences between Taitt and the present action. First, the plaintiff in Taitt was involved in very public litigation and settlement discussions against his employer.  That is clearly not the case here.  Also, the plaintiff in Taitt pointed to a similarly-situated employee who suffered adverse employment decisions after his involvement in a Title VII class action against the employer.  Here, Plaintiff has not provided any evidence of this, nor of pretext.  In addition, the plaintiff in Taitt suffered a career decline shortly after his participation in the protected activity.  In the present case, however, Plaintiff's performance was criticized by both Panarella and her preceding manager at Aventis before Defendant or Panarella was aware of Plaintiff's complaint with the CHRO. Furthermore, after Defendant became aware of Plaintiff's complaint, it still allowed her to continue her medical leave and impose her own working conditions.  So her employment conditions actually improved after Defendant learned of her CHRO complaint. In its April 7, 2003 letter,  Defendant also requested that Plaintiff return to work, which again differs from Taitt.  Based on the evidence as a whole, the Court concludes Plaintiff has not satisfied her prima facie burden.

38

Even if Plaintiff had fulfilled her <u>McDonnell</u> <u>Douglas</u> stage one burden, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination discussed at length above.  Plaintiff has failed to offer any evidence that this reason is pretext for any retaliatory behavior in response to Plaintiff's CHRO complaint.  Because Plaintiff fails to establish a causal nexus between the filing of her CHRO complaint and her termination, and because Defendant has offered a legitimate, non-pretextual reason for her termination, summary judgment is granted as to Plaintiff's retaliation claim.

## **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (Doc. No. 28) is hereby GRANTED on all counts.


SO ORDERED


_____
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this ___ day of January, 2006.